# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JON SMITH, | : | |
| Petitioner, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARK CAPOZZA, et al., | : | No. 19-cv-03147-JP |
| Respondents. | : | |

## MEMORANDUM OPINION

**Richard A. Lloret**  **March 17, 2022**
**U.S. Magistrate Judge**

Jon Smith seeks discovery in support of his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Doc. No. 4. Mr. Smith is currently serving a life sentence without the possibility of parole for a first-degree murder conviction. Mr. Smith claims that jurors and the victim's family engaged in improper communications during his trial, violating his Sixth Amendment right to an impartial jury. *See* Doc. No. 4, at 2–3. He seeks the names and contact information for the jurors so he may interview the jurors and develop this claim. *Id.* at 6–7. Acknowledging that the claim was never presented to the state courts, Mr. Smith points to the ineffectiveness of his trial and Pennsylvania Post-Conviction Relief Act ("PCRA") counsel as cause and prejudice to excuse the default. Doc. No. 1, at 7–8. The Commonwealth opposes this motion, arguing that Mr. Smith's juror misconduct claim is procedurally defaulted and that the court must address whether the default can be excused before the request should be considered. Doc. No. 8, at 1–2.

1

I held two days of evidentiary hearings[1] to address whether discovery is warranted in this matter, limited to addressing the alleged improper contact between the jurors and the victim's family and whether Mr. Smith's trial and PCRA counsel acted ineffectively by not addressing the communications with the courts. After considering the parties' briefings and testimonial and documentary evidence, I find Mr. Smith is unlikely to prevail on the merits of his ineffective assistance of counsel claim, and therefore find he has not shown good cause for pursuing discovery. I will deny Mr. Smith's discovery motion.

## STANDARD OF REVIEW

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, the petitioner must seek discovery pursuant to the Rules Governing Section 2254 Cases. Under these rules, a district court judge "may, for good cause, authorize a party to conduct discovery." Rule 6(a); *see also Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011) ("We review the District Court's denial of a discovery request for abuse of discretion.").

To establish "good cause," the petitioner must make specific allegations that demonstrate "reason to believe that the petitioner may, if the facts are fully developed, be able to" show that he or she is entitled to relief. *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see also Han Tak Lee v. Glunt*, 667 F.3d 397, 404 (3d Cir. 2012) (quoting *Williams*, 637 F.3d at 209) ("'A habeas petitioner may satisfy the good cause standard by setting forth specific factual

---

[1] The hearings were held on November 10, 2021 and March 9, 2022. Doc. No. 37, 40.

allegations which, if fully developed, would entitle him or her to the writ.'"). This means the petitioner must "point to specific evidence that might be discovered that would support a constitutional claim." *U.S. ex rel. Adonai-Adoni v. Prison Health Servs.*, No. 06-4491, 2007 WL 2407281, at *1 (E.D. Pa. Aug. 20, 2007) (internal citation omitted) (order denying motion for discovery); *see also Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000) ("[Petitioner] need only show good cause that the evidence sought would lead to relevant evidence regarding his petition."). Consequently, "bald assertions" and "conclusory allegations" do not establish good cause. *Green v. Vaughn*, No. 03-1052, 2005 WL 806705, at *1 (E.D. Pa. April 7, 2005) (quoting *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994)). "Fishing expeditions" are not allowed. *See Williams*, 637 F.3d at 210–11; *Marshall v. Beard*, No. 03-3308, 2010 WL 1257632, at *2 (E.D. Pa. Mar. 30, 2010) (quoting *Deputy*, 19 F.3d at 1493 (3d Cir. 1994)).

In making the "good cause" determination, the court should consider the "essential elements" of the petitioner's underlying habeas claim. *Bracy*, 520 U.S. at 904. Yet, "Rule 6(a) makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court," even in cases where "it would be an abuse of discretion not to permit any discovery." *Id.* at 909.

## **DISCUSSION**

Mr. Smith and his affiants allege there was an improper interaction between certain jurors and friends and family of the victim, and thus Mr. Smith requests the names and addresses of all jurors selected to sit on his murder trial. *See generally* Doc.

3

No. 4.[2] The Commonwealth opposes this discovery request, arguing that Mr. Smith's juror misconduct claim and the related trial counsel ineffectiveness allegation are procedurally defaulted, and thus there is no "good cause" for discovery. *See* Doc. No. 8 at 2, 8.[3] After considering the evidence, I find that Mr. Smith is unlikely to prevail on his ineffective assistance of counsel claim, thus he has not established the "good cause" necessary to pursue discovery in support of his habeas petition.[4]

To prevail on an ineffective assistance of counsel claim, a petitioner "must show counsel's performance was deficient," that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance may be shown by evidence of "ineptitude, inexperience, lack of preparation[,] or unfamiliarity with basic legal principles" on the part of counsel. *Gov't of Virgin Islands v. Weatherwax*, 20 F.3d 572, 579 (3d Cir. 1994) (internal citation omitted) (hereafter *Weatherwax I*). A petitioner also must demonstrate that he was prejudiced by the

---

[2] Mr. Smith also requested copies of all completed juror questionnaires in this case, should the contact information for jurors not be available. Doc. No. 4, at 7. However, he later conceded that it does not need the questionnaires of venirepersons who did not sit on the jury. *See* Doc. No. 9, at 4.

Additionally, Mr. Smith's habeas counsel filed a declaration outlining his attempts to get this information without a court order. *See* Doc. No. 4-2, at 33–34. He noted that prior counsel did not have this information nor is it included in the trial transcripts. *Id.* at 33. He also subpoenaed the relevant court office seeking the juror questionnaires for the jurors stricken by the prosecutor, in pursuit of another claim, but was told by the Philadelphia Court of Common Pleas that he would need a court order. *Id.* Counsel petitioned the PCRA court, but because the PCRA petition had already been denied, the PCRA court felt it did not have the authority to issue a court order. *Id.* at 33–34.

[3] Mr. Smith filed a reply brief. *See* Doc. No. 9. He primarily reiterates that he has established "good cause" for the discovery. *Id.* at 2–4.

[4] This opinion does not constitute a final resolution of Mr. Smith's ineffective assistance of counsel claim, as it only addresses the narrow issue of whether he has established good cause to warrant discovery. Determining whether Mr. Smith has shown "good cause" for warranting the discovery he requests necessarily requires analyzing his likelihood of success on the merits of this claim.

deficient performance to the point of being deprived of a fair trial. *Strickland,* 466 U.S. at 687.

Improper juror communications may well undermine a defendant's constitutional right to a fair trial. The Sixth Amendment guarantees criminal defendants the "the right to a speedy and public trial, by an *impartial* jury." The Supreme Court expounded on how private communications between jurors and non-jurors impact a defendant's Sixth Amendment rights in *Remmer v. United States*:

> In a criminal case, any private communication, contact or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.

347 U.S. 227, 229 (1954).[5] However, this presumption is "not conclusive"; in trial, the government has the burden "to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id*. When presented on post-conviction review through an ineffective assistance of counsel claim, the Petitioner must show that counsel was made aware of the claim and counsel's actions were both unreasonable and prejudicial in response to this knowledge. *See Strickland,* 466 U.S. at 687.

Mr. Smith's family and friends testified that, during a recess on one of the final days of trial, they observed jurors and members of the public together in the hallway outside the courtroom, and some jurors were talking with supporters of the victim. *See* N.T. 11/10/21 65:20–66:5, 69:19–21, 92:3–7, 94:2–10, 125:9–24; 3/9/22 7:9–8:20,

---

[5] This rebuttable presumption only applies where there is communication with a juror "about the matter pending before the jury." *See United States v. Console,* 13 F.3d 641, 666 (3d Cir. 1993) (quoting *Remmer v. United States*, 350 U.S. 377, 379 (1956)) (internal quotation marks omitted).

13:9–21, 18:6–13. Most witnesses could not hear what was spoken, but witness Greg Jenkins recounts hearing a juror say to the victim's supporters, "He's done, yeah he's done." *See* N.T. 11/10/21 93:7–16. Additionally, Mr. Smith's daughter, Jada Smith-Young, recalls hearing someone in the group say something along the lines of "I know he's guilty." N.T. 3/9/22 20:19–21:6, 26:13–15. Mr. Smith's brother, Arthur Smith, and Mr. Jenkins testified that they alerted Mr. Smith's trial counsel, Robert Levant, but Mr. Levant allegedly never informed the trial judge of these accusations. *See* N.T. 11/10/21 66:3–11, 70:3–11, 82:25–83:7, 92:17–93:11, 99:2–12, 116:1–13, 142:5–25, 143:24–144:7. Mr. Levant credibly testified that receiving information of this nature "would have likely left an impression," and his practice upon receiving such information would be to bring it to the court's attention and the Commonwealth's attention. N.T. 11/20/21 11:9–20. He stated he has no recollection of receiving such information from anyone during Mr. Smith's trial. N.T. 11/20/21 11:21–12:13.

    I believe the witnesses that some communication occurred involving jurors and members of the public in the hallway outside the courtroom. Nevertheless, I find that it is unlikely that Mr. Levant acted ineffectively in response to complaints from Mr. Smith's brother and friend that jurors and the victim's family engaged in improper communication. For an experienced criminal defense lawyer like Mr. Levant to receive information about juror misconduct and not act on it stretches credulity. This information would essentially allow him to move for a mistrial, allowing his client another opportunity to defend himself against the Commonwealth's charges.

    I find I do not need to resolve whether Mr. Levant acted ineffectively in this matter, though, because I find that Mr. Smith's PCRA counsel, Teri Himebaugh, certainly did not act ineffectively in failing to present this claim on PCRA review.

6

Section 2254(i) bars habeas relief for ineffective assistance of counsel during collateral post-conviction proceedings, such as a PCRA hearing. *Martinez v. Ryan,* 566 U.S. 1, 17 (2012). While the statute prohibits a claim based directly on collateral proceeding counsel's ineffectiveness, *Martinez* permits a petitioner to show that ineffectiveness of counsel in the collateral proceeding (in Pennsylvania, PCRA counsel) was the "cause" for a procedural default of a claim of trial counsel's ineffectiveness. *Id.* at 14. To qualify under *Martinez* for an exception to the normal rule of procedural default under *Coleman*, a petitioner must show 1) that his "ineffective assistance of trial counsel claim has some merit," and 2) his state initial-review post-conviction counsel was ineffective under *Strickland* for failing to present or properly preserve the issue. *Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019) (citing *Martinez*, 566 U.S. at 14) (internal quotation omitted).

Mr. Smith claims that he told Ms. Himebaugh about the alleged interactions between the jurors and the victim's family. N.T. 11/10/21 163:3–7. Ms. Himebaugh does not remember being informed of this issue, *see* N.T. 11/10/21 36:19–37:5. Mr. Smith, however, recounts that Ms. Himebaugh chose not to pursue this claim because she said she would have no way of proving it, and therefore it was never raised on PCRA review. *See* N.T. 11/10/21 164:19–165:2. Ms. Himebaugh credibly testified that if she had heard such a claim, it would have been a notable one to her. N.T. 11/10/21 38:2–6.

I find that Ms. Himebaugh testified credibly during this hearing and find no reason to doubt her recollection of the matter and her routine practices. To the contrary, I find Mr. Smith did not credibly testify. Most damaging to my credibility finding is Mr. Smith's testimony at the end of the hearing, when he claimed he pled guilty to an unsworn falsification to authorities charge in Luzerne County that he allegedly did not

7

commit, essentially amounting to admission of perjury. *See* N.T. 11/10/21 169:15–20, 187:3–189:22. Where Mr. Smith and Ms. Himebaugh's testimonies diverge, I find that Ms. Himebaugh's credibility merits crediting her statements over Mr. Smith's. Therefore, even if Mr. Smith could raise a valid ineffective assistance of trial counsel claim here, it is clear to me that he is unlikely to establish that his PCRA counsel was ineffective, under *Martinez*, for failing to raise the issue of trial counsel's alleged ineffectiveness. Thus, Mr. Smith will be foreclosed from pursuing a claim that his trial counsel was ineffective.

The nature of the information requested also weighs on my decision to deny Mr. Smith's motion. The names and contact information of jurors in a criminal trial should never be casually disclosed. I share the Commonwealth's concern that "[w]illingness to serve [as a juror in a criminal case] would surely be undermined if … jurors' names and addresses were readily handed over to defendants' agents." Doc. No. 8, at 13 (citation omitted). The Pennsylvania Supreme Court has outlined these public policy concerns in the First Amendment press freedom context, explaining that citizens have "expressed discomfort at the prospect of being harassed by the press during or after the case is over" and "jurors have expressed fear of physical harm related to serving on criminal juries." *Commonwealth v. Long*, 592 Pa. 42, 62, 922 A.2d 892, 904 (2007) (internal citations omitted). The Third Circuit has expressed similar concerns in the First Amendment context:

> The benefits of access and of public awareness of the duties and obligations of the jury process are weighed against concerns that courts may become carnivals, that jurors may be reluctant to serve in future cases if they fear their comments in the jury room will be repeated later by their fellow jurors for broadcast to the public, and that public knowledge of the factors behind a verdict may undermine respect for the process.

*United States v. Antar*, 38 F.3d 1348, 1363 (3d Cir. 1994). I am certain that Mr. Smith's counsel on habeas review, Daniel Silverman, would treat this information with the utmost sensitivity. Nevertheless, I am sufficiently concerned by the precedent which would be created by permitting discovery of this information in a section 2254 habeas case where good cause has not been shown that I will not permit this discovery to proceed.

## **CONCLUSION**

Based on the reasons outlined above, Mr. Smith's motion for discovery is denied. An appropriate order follows.

**BY THE COURT:**

*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**