IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JON SMITH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARK CAPOZZA, et al. | : | NO. 19-3147 |

### MEMORANDUM

**Padova, J.**                                                                                                                                         **September 30, 2024**

Petitioner Jon Smith has filed a counseled Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. For the following reasons, and after careful consideration of the Report and Recommendation prepared by United States Magistrate Judge Richard A. Lloret ("R&R") and Petitioner's Objections thereto, we largely overrule the Objections, approve and adopt the Report and Recommendation in all material respects, and dismiss the Petition.

**I.     BACKGROUND**

On April 20, 2012, following a jury trial in the Philadelphia County Court of Common Pleas, Petitioner was convicted of first-degree murder, carrying a firearm without a license, carrying a firearm on a public street, and possession of an instrument of a crime, all in connection with a shooting outside of a nightclub on October 4, 2009. Commonwealth v. Smith, No. CP-51-CR-0008131-2010, 2017 WL 10187728, at *1 (Court of Common Pleas Phila. May 18, 2017) ("Smith I"). By Petitioner's account,[1] the testimony at trial established the following facts:

> [S]hortly after midnight on October 4, 2009, George Williams . . . got into a fight with [Petitioner] outside the Platinum Nightclub in the Frankford/Harrowgate section of Philadelphia; that four or five other young men were also involved in the fight; that it had been preceded by forceful arguments on both sides; and that the participants were rivals from adjoining neighborhoods. Williams,

---

[1] For purposes of resolving Petitioner's Objections, we will accept this recitation of the facts as accurate.

>who was from the 7th Street neighborhood, announced that those who were from 8th and Indiana could no longer be permitted to come to 7th Street anymore.  During this time, Williams was "hyped", "amped up", "frantic", "pretty distraught", "really, really upset" and in a loud "ranting rage."   He removed his shirt so that he could fight more effectively.  Witnesses said that at some point after this physical fight ended, [Petitioner] returned to the scene and, after more words were exchanged – where Williams again laid down the marker that [Petitioner] and his 8th Street neighborhood friends and associates were no longer permitted in Williams' neighborhood – shot Williams.

(Pet'r's Objs. at 2-3 (citations omitted).)   The evidence at trial also showed that when Petitioner left the scene after the first confrontation, he did not return for ten to fifteen minutes.  (N.T. 4/18/12 at 233.)   When Petitioner returned, he asked Williams, "What's this shit you are talking about the guys from 8th street not being able to come to 7th street anymore?", and Williams "calm[ly]" responded "yes, no one from 8th street can ever come to 7th street again."   (Id. at 238-41.)   Following this exchange, Petitioner pulled a gun from his waist and fired twelve rapid shots, four of which struck Williams.   (Id. at 242; N.T. 4/17/12 at 205, 209, 234.)   Petitioner then put his gun back in his waistband and walked away.  (N.T. 4/18/12 at 243.)   Williams was pronounced dead shortly thereafter at Temple University Hospital.   (N.T. 4/17/12 at 222.)

Following the jury verdict against him in state court, Petitioner completed both direct and Post Conviction Relief Act ("PCRA") appeals in the state court system.   Among his claims in his PCRA appeal was a claim that his counsel on direct appeal was ineffective in failing to argue that the trial court abused its discretion in refusing trial counsel's request that the jury be charged on voluntary manslaughter as well as first-degree murder.   Smith I, 2017 WL 10187728, at *3.   In rejecting this claim, the PCRA court noted that, in order to prevail on his ineffectiveness claim, Petitioner had to first establish that his underlying claim of trial court error had merit.   Id. at *2 (citing Commonwealth v. Chmiel, 30 A.3d 1111, 1127 (Pa. 2011); Commonwealth v. Balodis, 747

2

A.2d 341, 343 (Pa. 2000)).

The PCRA court observed that Pennsylvania law provides that "[a] jury instruction on voluntary manslaughter must be given only 'where the offense has been made an issue in the case and where the evidence would reasonably support such a verdict.'"  Id. at *3 (quoting Commonwealth v. Thomas, 717 A.2d 468, 478 (Pa. 1998)).  Thus, a court can only give a voluntary manslaughter instruction, the court said, where the evidence "could rationally support the conclusion that" the killing was done "'under a sudden and intense passion resulting from serious provocation'" and that "'a reasonable person confronted by the same series of events, would become impassioned to the extent that his mind would be incapable of cool reflection.'"  Id. (first quoting 18 Pa. Cons. Stat. § 2503(a), and then quoting Commonwealth v. Kim, 888 A.2d 847, 853 (Pa. Super. Ct. 2005)); see also id. (noting that Kim sets forth the test for serious provocation (quoting Kim, 888 A.2d at 853)).  In the instant case, the PCRA court reasoned, the evidence did not support a voluntary manslaughter charge because Williams's "mere words" to Petitioner, ten to fifteen minutes after their physical altercation, did not establish "sufficient provocation."  Id. at *3-4 (citations omitted).  "For this reason alone," the court stated, there was no merit to Petitioner's claim that his appellate counsel was ineffective for failing to raise on direct appeal a claim grounded on the trial court's refusal to give the requested charge.  Id. at *4.  The PCRA court also stated, in the alternative, that the ineffectiveness claim had no merit because Petitioner claimed at trial that he did not shoot Williams and, under Pennsylvania law, a "voluntary manslaughter charge is not required where the accused denies having killed the victim."  Id. at *3 (citing Commonwealth v. Speight, 677 A.2d 317, 325 (Pa. 1996), and Commonwealth v. Haynes, 577 A.2d 564, 574 (Pa. Super. Ct. 1990)).

On appeal, the Superior Court affirmed the denial of relief, adopting the PCRA court's

3

"thoughtful and complete analysis" as its own and attaching a copy of the PCRA court's opinion. Commonwealth v. Smith, No. 678 EDA 2017, 2018 WL 1443392, at *2 (Pa. Super. Ct. March 23, 2018) ("Smith II"). It specifically noted that the record and law supported the PCRA court's conclusion that there was no evidence to support a voluntary manslaughter instruction where "the record showed that (a) [Williams] had done nothing to cause or provoke [Petitioner] to shoot him; (b) [Petitioner] had returned to the scene ten to fifteen minutes after his fight with [Williams], and (c) after a brief and calm exchange of words, [Petitioner] fired twelve shots at [Williams]." Id. (citing Smith I, 2017 WL 10187728, at *2-4). It further observed that it was proper to find "the ineffectiveness claim without merit because [Petitioner's] defense at trial was that he did not shoot the victim." Id. (citing Smith I, 2017 WL 10187728, at *2-4)

Following his loss in state court, Petitioner filed his currently pending habeas petition, in which he again argues that his appellate counsel was ineffective in failing to raise as an issue on direct appeal that the trial court erred in failing to instruct the jury on voluntary manslaughter. He also asserts a new claim of trial counsel ineffectiveness, in which he contends that trial counsel was ineffective in failing to object to the jury instruction's purported failure to advise the jury that the Commonwealth has the burden of proving each and every element of first- and third-degree murder beyond a reasonable doubt. In his R&R, the Magistrate Judge recommends that we reject the appellate counsel ineffectiveness claim because the state court did not violate or improperly apply the ineffective assistance of counsel standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), and did not base its conclusions on "an unreasonable determination of the facts." (R&R at 11 (quoting 28 U.S.C. § 2254(d)(1)-(2)).) He also recommends that we dismiss the new claim of trial counsel ineffectiveness as procedurally defaulted. (Id. at 15.)

4

### III.     DISCUSSION

Petitioner has filed Objections to the Magistrate Judge's recommendations that (1) we deny his ineffective assistance of counsel claim grounded on appellate counsel's failure to argue that the trial court erred in refusing to give a voluntary manslaughter instruction, and (2) we dismiss his new trial counsel ineffectiveness claim as procedurally defaulted.  In reviewing a Magistrate Judge's report and recommendation, we "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

#### A.     Appellate Counsel Ineffectiveness

##### 1.     Unreasonable determination of the facts

Petitioner objects to the Magistrate Judge's recommendation that the state court did not unreasonably determine the facts when it concluded that there was insufficient evidence in the record to support a voluntary manslaughter instruction.  Petitioner specifically faults the Magistrate Judge for not addressing what he deems "appreciable evidence" of provocation, including that he and Williams were "neighborhood rivals," that there was "existing enmity" between them, that Williams was in a "frenzied" and "amped up" state during their initial confrontation, and that "Williams'[s] proclamation that [Petitioner] and his 8th Street people would no longer be permitted on 7th Street . . . was a declaration of hostilities, if not war." (Pet'r's Mem. in Support of Habeas Pet'n ("Pet'r Mem."), Docket No. 47, at 14-15.)  Petitioner maintains that in "the cultural context" of warring city street gangs, a jury could reasonably conclude that Williams's actions and words constituted "adequate provocation to return a manslaughter verdict."  Id. at 15.  He argues that the Magistrate Judge erred in ignoring all of this

evidence, "cherry-pick[ing] only those facts that suggested that he was not provoked," and thereby failing to grant him habeas relief based on the PCRA court's unreasonable determination of the facts. (Pet'r's Objs. at 9.)

In considering whether a state court has unreasonably determined facts, we are required to give substantial deference to the state court's factual determinations, presuming those determinations to be correct, and placing the burden on a petitioner to disprove them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Indeed, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds, unless [it is] objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citations omitted).

Here, the PCRA court summarized the pertinent evidence as follows:

> Instantly, the record shows that the initial fight between defendant and the victim had ended after which both men went their separate ways. Approximately ten to fifteen minutes later as the victim was looking for a lost cell phone and was tying his shoe, defendant approached and in a calm voice, defendant said to the victim, "[W]hat's this shit you are talking about the guys from 8th Street not being able to come to 7th Street anymore?" The victim looked up and told defendant in a calm voice that what defendant heard was correct. Defendant immediately pulled a gun from his waistband and fired twelve shots at the victim, who unsuccessfully tried to duck out of the way. When defendant stopped shooting, he placed the gun back in his waistband and walked off in the direction of Paul Street as the rest of the "8th and Indiana guys", who were across the street, were laughing.

Smith I, 2017 WL 10187728, at *3 (citing N.T. 4/18/12, at 228-245). Petitioner does not dispute this factual summary, arguing instead that it is incomplete, because it does not take into account Williams's precise conduct prior to Petitioner shooting him or the cultural context of the altercation. Petitioner made these same factual arguments before that PCRA court and, after considering them, the court still found the factual record insufficient to support a jury charge for

6

voluntary manslaughter.[2]  As the PCRA court explained, there was simply no basis to find, under all of the circumstances presented, that at the time of the killing, the victim had caused or provoked Petitioner to shoot him, because "[m]ere words," no matter what the context, do not constitute sufficient provocation.  Smith I, 2017 WL 10187728, at *4 (citing Commonwealth v. Toledo, 529 A.2d 480 (Pa. Super. Ct. 1987), and Commonwealth v. Copeland, 554 A.2d 54, 58 (Pa. Super. Ct. 1989)); see also Smith II, 2018 WL 1443392, at *2 (adopting PCRA court's analysis).  On our deferential review, we simply cannot find this factual determination to be "objectively unreasonable."  Miller-El, 537 U.S. at 340.  Indeed, regardless of the cultural context and Williams's behavior ten to fifteen minutes before Petitioner shot him, it was surely objectively reasonable for the PCRA court to conclude that no reasonable jury could find that Petitioner was acting with "sudden . . . passion resulting from serious provocation" when, after many minutes, he returned to the scene of the prior altercation and shot Williams 12 times.  18 Pa. Cons. Stat. § 2503(a) (defining voluntary manslaughter).  We therefore overrule Petitioner's Objection to the Magistrate Judge's recommendation that the PCRA court did not unreasonably determine the facts.

### 2. Unreasonable application of clearly established federal law

Petitioner also objects to the Magistrate Judge's failure to address the argument in his habeas petition that the state court's decision was an unreasonable application of clearly

---

[2] The PCRA court summarized Petitioner's factual assertions as follows:
> According to defendant, appellate counsel should have raised the claim on appeal because the record indicates that the victim was quite upset and excited after he had been beaten up by several individuals from 8th Street and had told defendant that the guys from 8th Street were no longer permitted on 7th Street.  According to defendant, telling young Philadelphia males that they are not permitted to go to a certain street located in their neighborhood is an act of provocation, one which heightens emotions.

Smith I, 2017 WL 10187728, at *3.

7

established federal law insofar as it stated that he was not entitled to a voluntary manslaughter instruction because his request for that instruction conflicted with his primary defense that he was not the shooter.  (See Pet'r Mem. at 12 (citing Stevenson v. United States, 162 U.S. 313, 316 (1896), and Mathews v. United States, 485 U.S. 58, 63 (1988)).  However, as noted above, the PCRA court denied Petitioner's ineffective assistance of appellate counsel claim based on a conclusion that the underlying claim of trial court error had no merit because Petitioner failed to present evidence that would reasonably support a voluntary manslaughter verdict.  Smith I, 2017 WL 10187728, at *3-4.  Indeed, the PCRA court explicitly stated that "[f]or this reason alone," Petitioner's ineffectiveness claim grounded on the trial court's refusal to give the requested instruction had no merit.  Id. at *4 (emphasis added).  While the PCRA court also added that, under Pennsylvania law, a voluntary manslaughter instruction is not required where the accused denies having killed the victim, this was only an alternative reason for its rejection of Petitioner's ineffectiveness claim and was not essential to its rejection of that claim.  Id. at *4 (citing Commonwealth v. Speight, 677 A.2d 317, 325 (Pa. 1996)) (additional citation omitted).  We thus overrule Petitioner's Objection to the Magistrate Judge's failure to address his argument that this immaterial piece of the PCRA court's opinion was an unreasonable application of to federal law.

        3.    **Faulty Strickland prejudice analysis**

Petitioner next objects to the Magistrate Judge's alternative recommendation, in Section B(ii) of the R&R, that this same appellate counsel ineffectiveness claim fails on the prejudice prong of Strickland because the evidence clearly establishes that he was guilty of first-degree murder.  See Strickland, 466 U.S. at 687 (requiring a petitioner to prove not only that counsel's performance was deficient, i.e., the performance prong, but also that he was prejudiced by counsel's deficient performance i.e., the prejudice prong).  Petitioner points out that, where a

claim is one of ineffective assistance of appellate counsel, the petitioner need only "show a reasonable probability that, but for his [appellate] counsel's [deficient performance], he would have prevailed on his appeal." Smith v. Robbins, 528 U.S. 259, 285 (2000) (emphasis added) (citation omitted).   Petitioner therefore maintains that the Magistrate Judge's focus on whether he would have prevailed at trial, rather than whether he would have prevailed on appeal, is off the mark.

For purposes of resolving Petitioner's Objection only, we accept without deciding that the Magistrate Judge should have approached the question of prejudice from a different perspective and thus, we decline to adopt his analysis in that regard.  However, this does not affect our decision that there is no basis for habeas relief on the claim of appellate counsel ineffectiveness, because Petitioner has not established that the PCRA court's conclusion—that the ineffectiveness claim was meritless because Petitioner failed to present evidence that would reasonably support a voluntary manslaughter verdict—was either contrary to clearly established federal law or based on an unreasonable determination of the facts.   Accordingly, we sustain Petitioner's Objection to this aspect of the R&R, but only to the extent that we do not adopt the Magistrate Judge's unnecessary alternative analysis found in Section B(ii) of the R&R, and we overrule the Objection insofar as Petitioner suggests that any flaws in that analysis entitle him to habeas relief.

B. **Trial Counsel Ineffectiveness**

Finally, Petitioner objects to the Magistrate Judge's treatment of his new claim in his habeas petition that his trial counsel was ineffective in failing to object to the jury instructions, which did not instruct the jury that the Commonwealth had to prove each and every element of first- and third-degree murder beyond a reasonable doubt.  The Magistrate Judge recommends that this claim was procedurally defaulted because (1) Petitioner did not raise it on direct appeal or

in the PCRA proceedings and is now time-barred from raising it under state procedural rules, and (2) there is no cause to excuse the procedural default under the standard set forth in Martinez v. Ryan, 566 U.S. 1 (2012), which requires a petitioner to prove both that the procedurally defaulted claim has "some merit" and that PCRA counsel was ineffective under the test set forth in Strickland.  Workman v. Superintendent Albion SCI, 915 F.3d 928, 937 (3d Cir. 2019) (quoting Martinez, 566 U.S. at 14).  The Magistrate Judge recommends that the procedurally defaulted claim cannot be excused under the Martinez standards because there was no merit to the claim that the jury instructions were improper.

"Due process is violated when a jury instruction relieves the government of its burden of proving every element beyond a reasonable doubt."  Bennett v. Superintendent Graterford SCI, 886 F.3d 268, 285 (3d Cir. 2018) (citations omitted).  In determining whether there has been such a violation, "we ask whether there is 'some ambiguity, inconsistency, or deficiency in the instruction, such . . . that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.'"  Id. (alteration in original) (quoting Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009)).  We are not to judge the jury instruction "in artificial isolation" but must consider it "in the context of the instructions as a whole and the trial record."  Id. (quoting Sarausad, 555 U.S. at 191).

Here, the trial court specifically instructed the jury that "it is the Commonwealth that always has the burden of proving each and every element of the crime charged and that the Defendant is guilty of that crime beyond a reasonable doubt."  (N.T. 4/20/12, at 129.)  While this instruction is grammatically challenging, we read it to include the instruction that the Commonwealth "always has the burden of proving each and every element of the crime charged .

. . beyond a reasonable doubt."  (Id.)  Moreover, at no time did the jury instructions suggest the contrary, i.e., that the Commonwealth did not have to a prove each and every element beyond a beyond a reasonable doubt standard.  Rather, the trial court repeatedly instructed the jury that it was the Commonwealth's burden to prove Petitioner guilty beyond a reasonable doubt.  (See id. at 129 ("[T]he Defendant is presumed innocent throughout the trial unless you conclude . . . that the Commonwealth has proven [him] guilty beyond a reasonable doubt."; id. at 131 ("So to summarize: . . . The Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt.")

While Petitioner essentially complains that the court never used the precise words, "The Commonwealth [is] required to prove each and every element of [first- and third-degree murder] beyond a reasonable doubt" (Pet'r Mem. at 17), he also points to no instance in which the court suggested that some other burden of proof was applicable or that certain elements of the crime could be proven by a lower standard.  Under these circumstances and considering the jury instructions and record as a whole, on *de novo* review, we reach the same conclusion as the Magistrate Judge did, i.e., that the instructions in no way relieved the Commonwealth of its burden to prove all of the elements of murder beyond a reasonable doubt and, in turn, there is no merit to this claim of jury instruction error.  We thus overrule Petitioner's Objection to this aspect of the Magistrate Judge's R&R, and we approve and adopt the Magistrate Judge's analysis and conclusion that Petitioner's new claim of trial counsel ineffectiveness is procedurally defaulted.

### III. CONCLUSION

For all of these reasons, we overrule Petitioner's Objections, except to the extent that Petitioner objects to Section B(ii) of the R&R, and we approve and adopt the Magistrate Judge's R&R in all other respects.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.